IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-00504

| | |
|---|---|
| WILLIAM DAVID BOWDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM IN** |
| v. ) | **OPPOSITION TO** |
| ) | **DEFENDANT'S MOTION FOR** |
| TOWN OF CARY, ) | **SUMMARY JUDGMENT** |
| ) | |
| Defendant. ) | |
| ) | |

The parties have both moved for summary judgment and submitted their opening briefs. Mr. Bowden submits this brief in opposition to Defendant's motion for summary judgment. Because the reasons why Defendant is *not* entitled to summary judgment are the same as the reasons why Mr. Bowden *is* entitled to summary judgment, Mr. Bowden relies principally on his opening brief to explain his opposition to Defendant's motion. This brief will focus on responding to the erroneous arguments made in Defendant's opening brief and will not unnecessarily repeat arguments made in Mr. Bowden's opening brief.

## UNDISPUTED FACTS

The relevant facts are succinctly set out in Mr. Bowden's opening brief. Mr. Bowden does not quibble with the bare facts as presented by Defendant, but one of the implications that Defendants make from these facts is telling, and many of the facts are simply irrelevant.

*It is Undisputed that Defendant Places Great Emphasis on Uniformity.*

The Town highlights the great emphasis it puts (and has long put) on a "strong sense of community, "preserving and maintaining the Town's visual appearance," the Town's "positive

image," the "strong appearance standards for development," and the like. (Town Brief at pp. 4-5.) This is undisputed, and from this the Town seems to imply that it should be given extra latitude. However, the Town cannot save its unconstitutional statute merely by asserting that it really, *really* wants to silence speech. The First Amendment, of course, exists to prevent such efforts. Indeed, the fact that the Town is so forthright about its insistence on uniformity should only make the Court more concerned.[1]

*The Issue in this Case is Mr. Bowden's Sign, and Other Facts are Irrelevant.*

The Town spends many pages describing various aspects of the underlying dispute between Mr. Bowden and the Town: the nature of the drainage and flooding problems at Mr. Bowden's home, who or what caused the problems, efforts made by the Town at remediating the problems, etc. (Town Brief at pp. 8-15.) The Town claims that this is the "real dispute" between the Town and Mr. Bowden, implying that Mr. Bowden does not ultimately care about the sign. (Town Brief at pp. 8-9.) The Town points out that when Mr. Bowden was first approached by Town officials about his sign, he stated that he wanted the Town to buy his home and pay his something extra for his troubles and that he was not particularly interested in the nuances of the Sign Ordinance. (Town Brief at p. 8.) The Town points out that Mr. Bowden told the media that

---

[1] In a footnote in the facts section, the Town states that, after *Ladue*, the Town "found that it was essential to allow additional signs in residential neighborhoods to be used for the expression of the views of residents on matters of public interest." (Town Brief at p. 6 n.3) The "additional signs" allowed were part of a (slight) relaxation of the rules regarding "political signs." (Bowden Brief Ex. K.) Likewise, the Town states in another footnote in the fact section that "political signs" are allowed at certain times. (Town Brief at p. 7 n.4.) This nod to *Ladue* is irrelevant because, as explained in Mr. Bowden's opening brief, the rules for "political signs" do not apply to Mr. Bowden's wall sign and are not an alternative that Mr. Bowden can use because there are temporal and other restrictions on political signs. (Bowden Brief at p. 22.)

2

if the Town bought his house and paid him something extra amount for his troubles, he would take down the sign. (Town Brief at p. 8 n.8.)

The Town misses the point. *Of course* Mr. Bowden's ultimate goal is to get the Town to pay him for his house plus something extra for his troubles, and if the Town did so, Mr. Bowden would remove his sign. Mr. Bowden is not an ideological plaintiff who went out of his way to file this lawsuit in order to vindicate some abstract First Amendment principles (a plaintiff who might have standing problems). As such, Mr. Bowden — especially when first approached by the Town — did not have any particular interest in the Sign Ordinance itself.[2] But it is the sign that communicates the substantive message. And that is the point of the First Amendment — to provide a vehicle for people to communicate about substantive issues. The First Amendment is not a solipsism that protects only plaintiffs who care only about being able to speak and not what the actual message is. The plaintiff in *Cohen v. California*, 403 U.S. 15, 25 (1971) was against the draft during the Vietnam War, he was not just a lover of profanity in public places; had the draft ended, presumably he would not have worn the jacket anymore. It would have been nonsensical for California to have asserted in *Cohen* that the plaintiff's "real" interest was ending the draft, not with what his jacket could say. And it is nonsensical for the Town to assert as

---

[2] On page 9 of its brief, the Town states that, when Mr. Bowden was first approached by the Town regarding his sign, it "did not make any difference to Bowden as to 'what size sign' he could put up," quoting Mr. Bowden's deposition. To the extent that the Town is trying to use this testimony to assert that Mr. Bowden believed or currently believes that what the Sign Ordinance allows is adequate, the testimony does not support that assertion. The testimony cited by the Town makes clear that Mr. Bowden meant only that he wanted to get paid by the Town. (Bowden Brief Ex. A at p. 135.) Furthermore, Mr. Bowden later testified that, after having learned what the Sign Ordinance would allow, what the Sign Ordinance would allow "would not get the message across at all" and "would not get anybody's attention at all…." (Bowden Brief Ex. A at p. 149-50.)

3

some sort of defense or argument here that Mr. Bowden's "real" interest concerns the flooding issue.

Consequently, all of the facts regarding the underlying issue are irrelevant. It simply does not matter whether it was the Town or Mr. Bowden who has acted reasonably or unreasonably in connection with the flooding issue. Likewise, it does it matter whether the Town ever would give Mr. Bowden what he wants, or if Mr. Bowden is just tilting at windmills with his sign; if the Town never pays him, Mr. Bowden may want to communicate what happened to him in the past (he was "screwed"). Nor does it matter — and is entirely unsurprising — that Mr. Bowden did not investigate the Sign Ordinance or consider what it would allow before putting up his sign. The only question in this case, like the only question in *Cohen* and the dozens of other cases cited in Mr. Bowden's opening brief, is whether the First Amendment allows the government to regulate speech in the way it seeks.

## ARGUMENT

### I. THE TOWN'S BRIEF LEGAL ANALYSIS IS FLAWED.

The Town argues that the Sign Ordinance complies with *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), quoting from that case at length and citing virtually none of the many cases since *Ladue* that have expounded and explained that case, including in contexts remarkably similar to the context presented here. As explained in Mr. Bowden's opening brief, those cases make clear that the Sign Ordinance here is content based and fails strict scrutiny, and in the alternative that it fails intermediate scrutiny. To be sure, the ordinance in *Ladue* – essentially a total ban on residential signs – was more draconian than the Town's ordinance here. But *Ladue* was a more clear case and never implied that it represented the outer reaches of First Amendment protection;

4

that is, nothing in *Ladue* suggested that an ordinance slightly more relaxed than the ordinance in that case would be constitutional. It represented a baseline of protection, not a maximum. The many courts and cases cited in Mr. Bowden's opening brief make that quite clear, and this Court should look not just at *Ladue* but at the many appellate (including Fourth Circuit) and district court cases that have addressed sign ordinances in light of *Ladue*.[3]

Moreover, the Town simply assumes that the Sign Ordinance is content neutral, without addressing any of the facts, arguments, or cases cited by Mr. Bowden in his opening brief. (Bowden Brief at pp. 8-11.) The Town does not address whether the Sign Ordinance survives strict scrutiny – that is, whether its purported interests are compelling and whether the chosen means are necessarily and narrowly tailored – and the many facts, arguments, and cases cited by Mr. Bowden regarding that issue. (Bowden Brief at pp. 11-17.) Even assuming that the Sign Ordinance is content neutral, the Town does not address whether the purported interests are "significant,"[4] and the many facts, arguments, and cases cited by Mr. Bowden on that issue. (Bowden Brief at p. 18.) Nor does it address whether the Sign Ordinance is "narrowly tailored" to that interest, and the related facts, arguments, and cases cited by Mr. Bowden. (Bowden Brief at p. 18.) The Town summarily addresses the issue of adequate alternatives, but as explained below, its analysis there is flawed. Finally, the Town addresses the prohibition on fluorescent colors separately, as if the Town could constitutionally squelch speech merely by making sure

---

[3] It is telling that the primary case construing *Ladue* that the Town cites is an intermediate appellate case from a Minnesota state court, one that addresses *Ladue* only in a single footnote.

[4] The Town does assert that no empirical evidence is necessary to support those asserted interests, probably because it has none in this case. (Town Brief at p. 23.) This ignores *Arlington County Repub. Committee v. Arlington County*, 983 F.2d 587, 594 (4th Cir. 1993), where the Fourth Circuit held that lack of "specific aesthetic and traffic problems" in a given case strongly suggests that a sign ordinance violates intermediate scrutiny.

5

that each of its restrictions were codified in a separate statutory section. However, the Court must analyze all of the Sign Ordinance restrictions as applied to Mr. Bowden collectively, focusing on what the Sign Ordinance would allow and what it would disallow.

## II. THE TOWN'S IMPLIED "ADEQUATE ALTERNATIVES" ARE ILLOGICAL AND INADEQUATE, AND ITS STATED "ADEQUATE ALTERNATIVES" ARE FAR FROM ADEQUATE.

In the facts section of its brief, the Town states several methods by which Mr. Bowden supposedly could communicate his message other than through a type of sign. To the extent that the Town would urge these methods as supposed "adequate alternatives," they are illogical and inadequate.

First, the "alternatives" are illogical. The Town states that Mr. Bowden has been able to communicate his message through "multiple television interviews, a radio interview, and print media interviews," that he has had the attention of "national television" and other media outlets, and that he has communicated his message via a website. (Town Brief at p. 9 n.9 & 13 n.11.) Of course, it is precisely *because of the sign* that Mr. Bowden has received so much media attention and has been able to communicate his message of displeasure through these avenues. Indeed, every single interview and article mentions the sign, and most of them focus on the sign. (Bowden Brief Ex. L.) It seems obvious, for example, that the national Fox & Friends program on Fox News would not have had Mr. Bowden on the show had the dispute centered only on a flooding dispute between a town and a citizen, as opposed to a large and colorful sign that directly criticizes the Town. Mr. Bowden's own website focuses on the sign as well, and presumably few if any people would visit the site if it were merely about the flooding dispute between Mr. Bowden and the Town. The Court can take judicial notice of these facts, but to the

6

extent that proof is required, Mr. Bowden asked the Town's designee whether he had any information about why these media outlets decided to report on Mr. Bowden and his sign, and he did not. (Bowden Brief Ex. J at pp. 82-85.) And the Town has produced no evidence regarding how many people visit Mr. Bowden's website, or why. In short, the media attention that Mr. Bowden has received shows that the sign has worked exactly like Mr. Bowden intended, allowing him to communicate his message widely and effectively. As Mr. Bowden has testified, if the sign were removed, the attention would go away and he would not be able to communicate his message. (Bowden Brief Ex. A at pp. 122-23.)

In its brief, the Town also asserts that Mr. Bowden had the attention of the Town before he put up his sign. (Town Brief at p. 9.) Likewise, the Town implicitly criticizes Mr. Bowden for not going to Town Council meetings or for speaking at the "Public Speaks Out" portion of those meetings, implying that he would have had more of the Town's attention had he done so. (Town Brief at p. 9 n.9.) But the Town is not the only intended recipient of Mr. Bowden's message; other residents of Cary and the rest of the world are intended recipients, as well. Indeed, given that the Town has made quite clear that it will never pay Mr. Bowden what he seeks, Mr. Bowden likely has little further interest in getting or keeping the Town's attention. His goal likely will be to communicate to others his displeasure with what the Town did to him in the past. It is illogical to suggest that the supposed "alternative" methods to communicate this message would be available were it not for the sign.

Second, these supposed alternatives are not "adequate." As Mr. Bowden's opening brief makes clear, the Supreme Court has held that residential signs are unique and cannot be replaced with various other forms of speech. (Town Brief at pp. 20-21.); *Ladue*, 512 U.S. at 57.

7

Therefore, even if Mr. Bowden were somehow able to communicate his message through the media and his website without having the sign itself, the media and the website would not allow him to reach the same audience with the same message as his current sign.

Finally, the only stated alternatives in the Town's brief that exist in the Sign Ordinance itself are the two "residential signs."[5] Mr. Bowden, in his opening brief, actually assumed that there were two more alternatives in the Sign Ordinance: the "identification sign" and the "incidental sign." (Bowden Brief at p. 23.) That the parties even now cannot agree on what is allowed further highlights the frailties of the Sign Ordinance. In any event, if the Town insists that Mr. Bowden's only alternatives to his current sign are the two "residential signs," then this Court should accept that fact when ruling on whether there are "adequate alternative" methods for communication. Given that even the three alternatives are not adequate, as explained in Mr. Bowden's opening brief, having only one alternative makes the case even more clear.

### III. THIS LAWSUIT IS ONLY AS-APPLIED, BUT MR. BOWDEN HAS STANDING TO CHALLENGE THE "ARTWORK" PROVISION.

The Town argues that it is entitled to summary judgment on any "overbreadth," "facial," or "facial overbreadth" challenge to the Sign Ordinance. (Town Brief at pp. 26-28.) Consistent with Covenant Media of South Carolina v. City of North Charleston, 493 F.3d 421, 429-30 (4th Cir. 2007), Mr. Bowden challenges the Sign Ordinance only as applied – meaning only to the

---

[5] The Town does state than an alternative to Mr. Bowden's current sign is a "modest" two-square-foot wall sign allowed by the Sign Ordinance, possibly increased in size by a variance. (Town Brief at p. 22.) As Mr. Bowden explained in his opening brief, and as the Town ignores, this "alternative" is not adequate because even that barely-visible, tiny wall sign requires a prior permit and a $50 fee, and a variance is not available except in very rare circumstances and a with a $300 fee. (Bowden Brief at p. 22 & n.8.)

8

extent that it has injured him. He does not aim to protect the rights of anyone not before the Court.

The Town also asserts that Mr. Bowden lacks standing to challenge three provisions of the Sign Ordinance because he was "never cited for a violation" of those provisions: 1) § 9.1.2(B)(4) ("prohibit[ing] all signs not expressly permitted by this chapter"); 2) § 9.2 (exempting "holiday decorations" and "works of art" from the Sign Ordinance); and 3) § 9.4 (setting out "prohibited signs," which "include *but are not limited to*" those set forth in that section). (Town Brief at pp. 26-28.) As an initial matter, any challenge to § 9.1.2(B)(4) or § 9.4 is now moot because the Town recently removed those provisions from the Sign Ordinance. (Bowden Brief at p. 6. & Ex. N.)[6]

As outlined in Mr. Bowden's opening brief, however, he does challenge as vague the "public art" exemption.[7] And Mr. Bowden certainly has standing to challenge that provision. The Town's assertion that Mr. Bowden cannot challenge that provision because he was "never cited for a violation" of that provision makes no sense. The "public art" (and former "works of art") exemptions are *exemptions*. As such, one cannot "violate" those provisions; rather, any

---

[6] Actually, § 9.4 was changed from setting out "prohibited signs," which "include but are not limited to" those set forth in that section, to stating, "The following signs and devices are *specifically* prohibited: ..." (emphasis added). The new version could still be read, and most naturally should be read, as specifying only certain types of prohibited signs, not the full universe of prohibited signs. As such, the new provision suffers from the same problem (i.e., implying that there are unspecified types of signs that are prohibited) as the original provision. In any event, Mr. Bowden does not mount a direct challenge to that provision because it is obvious that his sign is specifically prohibited by the Sign Ordinance. Nonetheless, the provision is indicative of the Town's overreach.

[7] The "public art" exemption was also subject to the recent amendment. As explained in Mr. Bowden's opening brief, the Sign Ordinance used to exempt "works of art," whereas it now specifies that "public art," which is the same as "works of art," are not defined as signs. (Bowden Brief at p. 6.)

9

citation for violation of any portion of the Sign Ordinance is an implicit finding that the sign at issue is *not* "public art." The Town obviously has determined (at some point), according to the arbitrary procedures outlined in Mr. Bowden's opening brief, that Mr. Bowden's sign was not "public art." (Bowden Brief at pp. 26-27.) Finally, as explained in Mr. Bowden's opening brief, this argument is far from facile: Mr. Bowden's current sign either is "public art" or easily could be, depending on how that term is defined.

## **CONCLUSION**

This Court should deny summary judgment to the Town and grant summary judgment to Bowden.

Respectfully submitted this 24th day of May, 2010.

/s/ Mark R. Sigmon
Mark R. Sigmon
NC Bar No. 37762
GRAEBE HANNA & WELBORN, PLLC
4350 Lassiter at North Hills Ave., Ste. 375
Raleigh, NC 27609
Telephone: (919) 863-9094
Facsimile: (919) 863-9095
Email: msigmon@ghwlawfirm.com

*Cooperating Attorney for the American Civil Liberties Union of North Carolina Legal Foundation

Katherine Lewis Parker
NC Bar No. 36263
Legal Director, American Civil Liberties Union of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344

Email: acluncklp@nc.rr.com

*Counsel for Plaintiff David Bowden*

11

# CERTIFICATE OF SERVICE

I hereby certify that on May 24th, 2010, I electronically filed the foregoing **Memorandum in Opposition to Defendant's Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Elizabeth A. Martineau, emartineau@grahykinglaw.com
Lisa C. Glover, lisa.glover@townofcary.org

/s/ Mark R. Sigmon
Mark R. Sigmon